UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JUSTO BETANCOURT,

          Petitioner,

      v.

WARDEN ALLIGATOR
ALCATRAZ, OFFICIAL
CAPACITY; FIELD OFFICE
DIRECTOR U.S. IMMIGRATION
AND CUSTOMS ENFORCEMENT
MIAMI FIELD OFFICE, OFFICIAL
CAPACITY; ACTING DIRECTOR
TODD LYONS, OFFICIAL
CAPACITY; SECRETARY KRISTI
NOEM, OFFICIAL CAPACITY;
AND ATTORNEY GENERAL
PAMELA BONDI, OFFICIAL
CAPACITY;

          Respondents,

Case No. 2:26-cv-307-KCD-DNF

_____/

## **ORDER**

Petitioner Justo Betancourt is a Cuban citizen who is subject to a final

order of removal. (Doc. 1 ¶ 3.)[1] He was recently detained by U.S. Immigration

and Customs Enforcement ("ICE"). He now seeks a writ of habeas corpus

under 28 U.S.C. § 2241, challenging the legality of his continued custody.

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

The background of the dispute is relatively straightforward. Betancourt entered the United States in 1990 and was granted lawful status several years later. Following numerous criminal convictions, including for conspiracy to distribute methamphetamine, an immigration judge ordered his removal in 2020. Because Betancourt is a Cuban national—making his actual deportation unlikely at the time—ICE could not immediately effectuate his return. So the government released him on an "Order of Supervision," which is essentially a form of immigration parole where he checked in with the government but otherwise lived his life. Then, during a routine check-in on October 29, 2025, ICE arrested him, revoked his release, and put him behind bars.

Betancourt mounts a multi-pronged attack. He challenges his confinement as substantively unlawful because his removal is not reasonably foreseeable, procedurally defective because he was denied due process, and outside the Administrative Procedure Act. (*See* Doc. 1.) The Government counters that it acted lawfully to enforce a final removal order. (Doc. 7.)

The Government is right on the timeline, but wrong on the process. Betancourt's substantive challenge to the length of his detention is premature, and his APA argument falls flat. But the government cannot strip a person's conditional liberty and leave them sitting in a jail cell for months without a chance to speak. Because the right to be heard in a meaningful

2

manner is a fundamental requirement of due process, more process is constitutionally required here. Betancourt's petition is thus **GRANTED IN PART AND DENIED IN PART** as set forth below.

## I. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

## II. Discussion

Betancourt raises three substantive claims challenging his continued detention, each of which is addressed below.

### A. Substantive Due Process (Count I)

A noncitizen subject to a final order of removal, like Betancourt, has no inherent right to walk free while awaiting deportation. *See* 8 U.S.C. § 1231. "Detention during deportation proceedings" is simply "a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003).

3

But there is a catch. Holding a removable alien indefinitely is also a constitutional non-starter since "the Due Process Clause applies to all persons within the United States." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

To reconcile these points, the Supreme Court in *Zadvydas* capped "an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689. And to give lower courts a workable yardstick, the Court drew a line at six months: any post-removal detention lasting six months or less is "presumptively reasonable." *Id.* To have a substantive due process claim in this context, then, "the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002).

Apply that framework here, and Betancourt's claim immediately runs into a math problem: he has not been detained long enough. ICE grabbed him on October 29, 2025. Because he has been in custody just over five months, he remains within the window in which his detention is presumptively reasonable. *See Guerra-Castro v. Parra*, No. 1:25-CV-22487, 2025 WL 1984300, at *4 (S.D. Fla. July 17, 2025) (finding habeas petition "premature" because "Petitioner has not been detained for more than six months"); *see*

4

*also Jiang v. Mukasey*, No. 208-CV-773-FTM-29DNF, 2009 WL 260378, at \*2 (M.D. Fla. Feb. 3, 2009); *Noel v. Glades Cnty. Sheriff*, No. 2:11-CV-698-FTM-29, 2011 WL 6412425, at \*2 (M.D. Fla. Dec. 21, 2011).

To keep his claim alive, Betancourt proposes a different way to run the clock. He argues that the six-month period started running the moment his removal order became final in October 2020, meaning the window slammed shut years ago while he was out on supervision. Alternatively, he asks the Court to aggregate the 31 days he spent in ICE custody in 2020 with his current stint in custody to push him over the six-month mark.

Neither argument works. *Zadvydas* was aimed at the severe, physical deprivation of liberty that comes from sitting in a jail cell indefinitely. The Court "used the words 'detain' and 'custody' to refer exclusively to physical confinement and restraint." *Jennings v. Rodriguez*, 583 U.S. 281, 311 (2018). It defies common sense to suggest that a clock designed to prevent indefinite imprisonment continues to run while a person is living freely in the community. "Because *Zadvydas* clearly involved *detention* of a petitioner during the presumptively reasonable period, it defies common sense to suggest that *Zadvydas* time can run while a petitioner is not in custody." *Cheng Ke Chen v. Holder*, 783 F. Supp. 2d 1183, 1192 (N.D. Ala. 2011). The six-month clock measures actual lockup, not supervised freedom. *See Akinwale*, 287 F.3d at 1052 ("[I]n order to state a claim under *Zadvydas* the

5

alien ... must show post-removal order *detention* in excess of six months [and] also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." (emphasis added).)

As for aggregating his past custody, District courts are split on whether prior time in ICE custody should be combined to satisfy the six-month *Zadvydas* clock. Some have firmly rejected this cumulative approach. They reason that if "detentions [are counted] in the aggregate, any subsequent period of detention, even one day, would raise constitutional concerns." *Barrios v. Ripa*, No. 1:25-CV-22644, 2025 WL 2280485, at *8 (S.D. Fla. Aug. 8, 2025). Because the executive branch is tasked with great deference in effectuating removals, these courts warn that constantly adjudicating the constitutionality of every brief re-detention would improperly obstruct that statutory discretion. *Meskini v. Att'y Gen. of U.S.*, No. 4:14-CV-42 (CDL), 2018 WL 1321576, at *3 (M.D. Ga. Mar. 14, 2018). Under this view, *Zadvydas* does not function as a "Get Out of Jail Free Card that may be redeemed at any time just because an alien was detained too long in the past." *Id.*; *see also Flores-Reyes v. Assistant Field Off. Dir.*, No. 26-CV-20226, 2026 WL 406708, at *2 (S.D. Fla. Feb. 13, 2026).

Conversely, other courts have treated the *Zadvydas* period as cumulative. *Chen v. Holder*, No. CV 6:14-2530, 2015 WL 13236635, at *2

(W.D. La. Nov. 20, 2015). This approach is driven by the constitutional imperative to prevent the government from indefinitely detaining noncitizens through a loophole of release and re-detention. *Krechmar v. Parra*, No. 2:25-CV-01095-SPC-DNF, 2025 WL 3620802, at *3 (M.D. Fla. Dec. 15, 2025). To consider only the current, isolated period of confinement—ignoring all prior custody—would allow the government to bypass *Zadvydas* through successive detentions. For these courts, aggregation is the only way to safeguard against the precise danger of indefinite detention that the Supreme Court sought to prevent. *See Rodriguez Romero v. Ladwig*, No. CV 25-1106-JWD-EWD, 2026 WL 321437, at *12 (M.D. La. Feb. 6, 2026).

This Court declines to endorse a blanket rule that all prior periods of confinement automatically aggregate to satisfy the *Zadvydas* six-month clock. Such a categorical approach is practically unworkable and effectively penalizes the government for its past lawful actions. If every prior day spent in immigration custody simply rolled over into the present calculus, the government's statutory authority to briefly re-detain a noncitizen to finalize a removal would be severely restricted, if not eliminated entirely. The six-month period established in *Zadvydas* was designed to provide a functional window to negotiate with foreign nations, secure travel documents, and coordinate the complex logistics of deportation. A strict aggregation rule ignores the reality that diplomatic circumstances evolve. If a foreign

government that previously refused repatriation suddenly agrees to issue travel documents, the United States needs a practical opportunity to effectuate that newly viable removal. Mandating an automatic rollover of all past detention would force the immediate release of a noncitizen even when their current custody is driven by an imminent, foreseeable deportation, ultimately frustrating the core purpose of the removal statute.

This approach finds support in both the reasoning of *Zadvydas* and the historical foundations of the vehicle Betancourt employs (habeas corpus). In *Zadvydas*, the Supreme Court eschewed a rigid, mechanical formula, focusing instead on whether the length of detention remains "reasonably necessary to secure removal." 533 U.S. at 699. The Court explicitly instructed lower courts to measure reasonableness in light of the specific circumstances of the case and the actual likelihood of a future deportation. *Id.* ("It should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal."). That directive undermines the logic of a blind, automatic aggregation of prior custody days here. *See also Meskini*, 2018 WL 1321576, at *3.

A flexible standard also aligns with the fundamental principle that habeas corpus is "at its core, an equitable remedy." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). Because habeas relief is governed by equitable principles, courts are empowered to look beyond a mere mathematical tally to examine

8

the totality of the circumstances. *Id.*; *see also Duckworth v. Eagan*, 492 U.S. 195, 213 (1989) (O'Connor, J., concurring) ("[T]he Court has long recognized that habeas corpus [is] . . . governed by equitable principles[.]"). By inquiring into whether the government has engaged in a deliberate cycle of release and re-detention, the court exercises its equitable discretion to prevent gamesmanship, all while preserving the executive branch's necessary flexibility to enforce the immigration laws.

Applying this standard here, Betancourt's argument for aggregation falls short. While he points to his prior period of ICE custody, the record is devoid of evidence that immigration officials manipulated his release and re-arrest to bypass the six-month presumption or avoid judicial oversight. Without proof of such tactical maneuvering, this Court treats his present custody as an independent, good-faith endeavor to secure his deportation.

When the Government holds a noncitizen for only a few months to execute a valid removal order, as claimed here, it is not doling out an unconstitutional penalty. It is simply doing what the regulatory scheme authorizes. Because his brief confinement remains firmly tethered to a legitimate, civil immigration purpose, Betancourt's substantive due process claim fails. *See H.N. v. Warden, Stewart Det. Ctr.*, No. 7:21-CV-59-HL-MSH, 2021 WL 4203232, at *3 (M.D. Ga. Sept. 15, 2021); *Gudino v. Lowe*, No. 1:25-CV-00571, 2026 WL 526366, at *8 (M.D. Pa. Feb. 25, 2026) ("[T]he length of

9

detention is generally not unreasonable until the noncitizen has been detained for more than six months.").

## B. Procedural Due Process (Count II)

The Fifth Amendment prohibits deprivation of an individual's life, liberty, or property without due process of law. U.S. CONST. amend. V. "[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982).

The first step is easy here. Once ICE unlocked the doors and placed Betancourt on supervised release, he acquired a conditional liberty interest that triggered constitutional protection before it could be taken away. *See Young v. Harper*, 520 U.S. 143, 147-48 (1997). This is true even when the released individual is subject to extensive conditions of release. *See Rodriguez Romero v. Ladwig*, No. CV 25-1106-JWD-EWD, 2026 WL 321437, at *11 (M.D. La. Feb. 6, 2026) ("[N]on-citizens have an overwhelming liberty interest in their continued release under [an] Order of Supervision . . . that

10

may not be removed without due process."); *see also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the [Due Process] Clause protects.").

That takes us to the second step: determining exactly what process is due. At its core, the Due Process Clause demands that before the government strips a person of a protected liberty interest, it must provide notice and a meaningful opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). "Due process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010).

In the context of revoking a noncitizen's supervised release, ICE's regulations strike that constitutional balance by guaranteeing written notice and an informal interview that allows the individual to respond. *See* 8 C.F.R. § 241.13(i).[2] As best the Court can tell, Betancourt received neither.

The Government's response is notable for what it leaves out. It points to no hearing, no informal interview, and no immediate forum where Betancourt could contest his sudden return to custody. Nor does it provide

---

[2] Because the Government previously released Betancourt after determining that there was no significant likelihood of his removal, the regulation governing his return to custody here is 8 C.F.R. § 241.13(i). *See Choy v. Woosley*, No. 4:25-CV-197-DJH, 2026 WL 324601, at *3 (W.D. Ky. Feb. 6, 2026).

any contemporaneous notice paperwork that Betancourt might have received at the time of his arrest. (*See* Doc. 7.) By effectively saying nothing on the issue, the Government leaves Betancourt's position entirely unrebutted. Taking a person's conditional liberty and making them sit in a jail cell for months before even glancing at their paperwork flips the constitutional baseline on its head. When the government skips a mandatory procedural safeguard meant to provide a meaningful opportunity to be heard, that complete regulatory bypass violates due process.

Due process is flexible. It "calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). To be sure, Betancourt is a noncitizen subject to a final removal order, meaning he does not possess the full panoply of rights enjoyed by a citizen. But even with that caveat, the Constitution demands more than what has been offered here. While ICE's regulations do provide for a file review within several months after supervision is revoked, *see* 8 C.F.R. § 241.4, that is not sufficient. As other courts have recognized, a belated review, held more than three months after the jail cell door slams shut, is simply too little, too late to protect the core liberty interest at stake. *See Grigorian*, 2025 WL 2604573, at *9; *see also United States v. Smith*, 30 F.4th 1334, 1338 (11th Cir. 2022) ("We have said that the complete denial of the opportunity to be heard on a material issue is a violation of due process which is never harmless error[.]").

Betancourt has proven a constitutional violation—the government cut corners and denied him the process he was due. But winning on a procedural claim is one thing; getting the remedy he wants is another.

Betancourt seeks immediate release from custody. (Doc. 1 at 24.) That is a bridge too far. Habeas corpus is, at its core, governed by equitable principles. *Munaf v. Geren*, 553 U.S. 674, 693 (2008). And equity counsels against the drastic remedy of immediate release here for a couple of reasons. *Id.* ("The question, therefore, even where a habeas court has the power to issue the writ, is whether this be a case in which [that power] ought to be exercised.").

First, the natural remedy for a procedural shortcoming is a procedural fix. When an agency skips a step in its own rulebook, the typical judicial response is to force the agency to go back and do its job right—not to throw open the jailhouse doors. *See, e.g.*, *Msezane v. Gartland*, No. 5:19-CV-51, 2020 WL 1042293, at *7 (S.D. Ga. Jan. 29, 2020) ("Critically, the Eleventh Circuit explained in the context of prolonged § 1226(c) detention, procedural due process does not require automatic release of a criminal alien once the detention is unreasonably prolonged but, instead, requires the government to afford the alien an individualized bond inquiry."). The specific injury Betancourt claims here is the deprivation of notice paperwork and an informal interview under § 241.13(i). The logical cure, therefore, is to order

13

exactly that. Granting a substantive windfall like immediate release for a purely procedural error overreaches. *See Nguyen v. Noem*, 797 F. Supp. 3d 651, 663–64 (N.D. Tex. 2025) ("The Supreme Court [has] made clear that error regarding one's confinement does not mean that release is the appropriate remedy.").

Second, the writ of habeas corpus is fundamentally forward-looking. It asks whether a petitioner's confinement is lawful today and whether it can lawfully continue tomorrow. *See Walker v. Wainwright*, 390 U.S. 335, 336 (1968) ("[T]he great and central office of the writ of habeas corpus is to test the legality of the prisoner's current detention."). A straightforward fix can easily restore Betancourt's detention into constitutional compliance. Until ICE proves unwilling or unable to provide the process its regulations require, tearing up the detention order is simply premature. In the Court's view, the proper move is to hold the agency to its own rules, test whether it can cure the defect, and reserve the drastic remedy of release for a true failure to comply. To that end, the Government must provide the required procedures under 8 C.F.R. § 241.13(i) by April 17, 2026.

### C. Administrative Procedure Act (Count III)

Finally, Betancourt invokes the APA. (Doc. 1 at 23.) The difficulty here is twofold. First, Betancourt has brought these claims in a habeas petition, which is the wrong vehicle for the job. The writ of habeas corpus exists to

challenge the fact or duration of physical confinement. It is not a catch-all funnel for standard administrative grievances. Trying to shoehorn a freestanding APA challenge into a habeas petition simply does not work. *See Fleurimond v. Noem*, No. CV-26-00037-PHX-MTL, 2026 WL 507542, at \*3 (D. Ariz. Feb. 24, 2026). A habeas petition comes with a streamlined procedure, fast-tracked rules, and a nominal filing fee. An APA challenge, by contrast, is a standard civil action with a heftier filing fee and following the ordinary, more deliberate pace of the Federal Rules of Civil Procedure. Litigants cannot sidestep those standard requirements by simply slapping a habeas label on an administrative complaint. *See Alvarez v. Noem*, No. 5:26-CV-0013-JKP, 2026 WL 93972, at \*7 (W.D. Tex. Jan. 9, 2026); *Richmond v. Scibana*, 387 F.3d 602, 606 (7th Cir. 2004) (recognizing legal distinction between habeas cases and civil actions brought under APA, which have different filing fees and exhaustion provisions).

Second, the APA itself leaves no room for these claims. The APA operates as a fallback option, providing a right of judicial review only when "there is no other adequate remedy in a court." 5 U.S.C. § 704. But Betancourt has an adequate remedy—the very habeas petition he filed to get through the courthouse doors. *See Trump v. J.G.G.*, 604 U.S. 670, 674 (2025) (Kavanaugh, J., concurring). Because the writ of habeas corpus provides a fully adequate avenue to test the legality of his custody—which is the only

15

thing Betancourt is challenging here—the APA simply leaves no room for these redundant claims. *See Fleurimond*, 2026 WL 507542, at \*3, *Rivera v. Noem*, No. 1:25-CV-01289 KWR-KBM, 2026 WL 381309, at \*7 (D.N.M. Feb. 11, 2026).

One final issue requires attention. Throughout his petition, Betancourt makes reference to the Government's recent, failed attempt to remove him to Mexico. But he never actually ties that narrative to a distinct legal claim for this Court to resolve. Nor does he allege that the Government denied him the opportunity to challenge Mexico as a designated country of removal through the proper administrative channels. A petitioner cannot just drop a factual grievance on the table and expect the Court to connect the dots. In our adversarial system, a party must do the heavy lifting of framing the legal issue. *See United States v. Campbell*, 26 F.4th 860, 872 (11th Cir. 2022) ("[W]e rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present."). To the extent Betancourt is attempting to raise a standalone claim regarding his removal destination, it is denied as undeveloped.

### III. Conclusion

The Government violated the Constitution when it canceled Betancourt's supervision without providing him any process. But winning on procedure does not entitle him to the substantive windfall of immediate

16

release. Rather, the appropriate remedy is to require the Government to do its job and provide the process due. Accordingly:

1.  Betancourt's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED IN PART** and **DENIED IN PART**.

2.  To the extent Betancourt seeks immediate release from ICE custody or any other relief, the petition is **DENIED**.

3.  To the extent Betancourt seeks a procedural remedy for the revocation of his supervised release, the petition is **GRANTED**.

4.  Respondents are **ORDERED** to provide Betancourt with the process required by 8 C.F.R. § 241.13(i) by **April 17, 2026**. If that procedure is not provided by the Court's deadline, Respondents are directed to release Betancourt.

5.  The Clerk is directed to enter judgment accordingly and close the case. The Court will retain jurisdiction to enforce this Order.

**ORDERED** in Fort Myers, Florida on April 3, 2026.

Kyle C. Dudek
United States District Judge

17